IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Wendy Ann Robinson, ) | C/A No. 0:12-842-RBH-PJG |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **REPORT AND RECOMMENDATION** |
| ) | |
| Carolyn W. Colvin, Acting Commissioner ) | |
| of Social Security,[1] ) | |
| ) | |
| Defendant. ) | |
| _____) | |

This social security matter is before the court for a Report and Recommendation pursuant to Local Civil Rule 83.VII.02 DSC et seq. The plaintiff, Wendy Ann Robinson ("Robinson"), brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of a final decision of the defendant, Acting Commissioner of Social Security ("Commissioner"), denying her claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). Having carefully considered the parties' submissions and the applicable law, the court concludes that this matter should be remanded for further proceedings.

**ADMINISTRATIVE PROCEEDINGS**

In July 2009, Robinson applied for DIB and SSI, alleging disability beginning May 23, 2009. Robinson's applications were denied initially and upon reconsideration, and she requested a hearing before an administrative law judge ("ALJ"). A hearing was held on August 3, 2011, at which Robinson, who was self-represented, appeared and testified. After hearing testimony from a

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Carolyn W. Colvin is substituted for Michael J. Astrue as the named defendant because she became the Acting Commissioner of Social Security on February 14, 2013.



vocational expert, the ALJ issued a decision on August 9, 2011 denying benefits and concluding that Robinson was not disabled. (Tr. 11-21.)

Robinson was born in 1973 and was thirty-six years old at the time of her alleged disability onset date. (Tr. 235.) She completed high school with a certificate of attendance and completed a training program as a nursing assistant. (Tr. 262-63.) She has past relevant work experience as a newspaper carrier; a security guard; an inspector at a poultry factory, a plastic company, and a tire company; a certified nursing assistant; and a cashier. (Tr. 255.) Robinson alleged disability since May 23, 2009 due to depression, a leaking heart valve, borderline diabetes, asthma, migraines, a hiatal hernia, breathing problems, a knot on her foot, a thyroid condition, two spots on her lungs, and acid reflux. (Tr. 254.)

The ALJ found as follows:

1. The claimant meets the insured status requirements of the Social Security Act through March 31, 2010.

2. The claimant has not engaged in substantial gainful activity since the alleged onset date (20 CFR 404.1571 *et seq.,* and 416.971 *et seq.*).

3. Since the alleged onset date of disability, May 23, 2009, the claimant has had the following severe impairments: asthma, obstructive sleep apnea, headaches, and anxiety[.] Beginning on the established onset date of disability, June 1, 2010, the claimant has had the following severe impairments: asthma, obstructive sleep apnea, headaches, anxiety, and bilateral carpal tunnel syndrome (20 CFR 404.1520(c) and 416.920(c)).

\* \* \*

4. Since the alleged onset date of disability, May 23, 2009, the claimant has not had an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

\* \* \*

5. . . . [P]rior to June 1, 2010, the date the claimant became disabled, the claimant had the residual functional capacity to perform a range of light work



as defined in 20 CFR 404.1567(b) and 416.967(b) in that she could lift and carry up to twenty pounds occasionally and ten pounds frequently; stand and walk for about six hours in a workday; and sit throughout the workday. She could never climb ladders, ropes, or scaffolds. She could finger, handle, and feel no more than frequently with both hands. She could not work with concentrated exposure to dust, fumes, gases, odors, or harsh chemicals, or in extremes of temperature or humidity. She could not face concentrated work at unprotected heights or more than frequently operate machinery with dangerous, exposed moving parts. By reason of her headaches and mental impairment, she could perform only unskilled work, involving no more than occasional direct contact with the public, no more than occasional team-type interaction with co-workers, no strict production quotas, no complex detailed instructions, and no complex reading.

\* \* \*

6. . . . [B]eginning on June 1, 2010, the claimant has the residual functional capacity to perform a range of sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) in that she can lift and carry up to ten pounds occasionally and only light objects frequently; stand and walk for about two hours in a workday; and sit throughout the workday. She can never climb ladders, ropes, or scaffolds. She cannot work with concentrated exposure to dust, fumes, gases, odors, or harsh chemicals, or in extremes of temperature or humidity. She cannot face concentrated work at unprotected heights or more than frequently operate machinery with dangerous, exposed moving parts. By reason of her headaches and mental impairment, she still can perform only unskilled work, involving no more than occasional direct contact with the public, no more than occasional team-type interaction with co-workers, no strict production quotas, no complex detailed instructions, and no complex reading. Due to additional impairment of her wrists and hands, however, she now can only occasionally finger, handle, and feel with both hands.

7. Since May 23, 2009, the claimant has been unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

\* \* \*

8. Prior to the established disability onset date, the claimant was a younger individual age 18-49. The claimant's age category has not changed since the established disability onset date (20 CFR 404.1563 and 416.963).

9. The claimant completed high school with a certificate of attendance rather than a diploma, but she has also completed a training program as a nursing assistant. She is able to communicate in English (20 CFR 404.1564 and 416.964).



10. Prior to June 1, 2010, transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled" whether or not the claimant has transferable job skills.  Beginning on June 1, 201, the claimant has not been able to transfer job skills to other occupations (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

\* \* \*

11. Prior to June 1, 2010, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1569, 404.1569a, 416.969, and 416.969a).

\* \* \*

12. Beginning on June 1, 2010, considering the claimant's age, education, work experience, and residual functional capacity, there are no jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1560(c), 404.1566, 416.960(c), and 416.966).

\* \* \*

13. The claimant was not disabled prior to June 1, 2010, but became disabled on that date and has continued to be disabled through the date of this decision (20 CFR 404.1520(g) and 416.920(g))

14. The claimant was not under a disability within the meaning of the Social Security Act at any time through March 31, 2010, the date last insured (20 CFR 404.315(a) and 404.320(b)).

(Tr. 13-21.)  The Appeals Council denied Robinson's request for review on February 3, 2012, making the decision of the ALJ the final action of the Commissioner.  (Tr. 1-4.)  This action followed.

**SOCIAL SECURITY DISABILITY GENERALLY**

Under 42 U.S.C. § 423(d)(1)(A), (d)(5) and § 1382c(a)(3)(H)(I), as well as pursuant to the regulations formulated by the Commissioner, the plaintiff has the burden of proving disability, which is defined as an "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R.



§§ 404.1505(a), 416.905(a); see also Blalock v. Richardson, 483 F.2d 773 (4th Cir. 1973). The regulations require the ALJ to consider, in sequence:

(1) whether the claimant is engaged in substantial gainful activity;

(2) whether the claimant has a "severe" impairment;

(3) whether the claimant has an impairment that meets or equals the requirements of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings"), and is thus presumptively disabled;

(4) whether the claimant can perform her past relevant work; and

(5) whether the claimant's impairments prevent her from doing any other kind of work.

20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).[2] If the ALJ can make a determination that a claimant is or is not disabled at any point in this process, review does not proceed to the next step. Id.

Under this analysis, a claimant has the initial burden of showing that she is unable to return to her past relevant work because of her impairments. Once the claimant establishes a *prima facie* case of disability, the burden shifts to the Commissioner. To satisfy this burden, the Commissioner must establish that the claimant has the residual functional capacity, considering the claimant's age, education, work experience, and impairments, to perform alternative jobs that exist in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(A)-(B); see also McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983); Hall v. Harris, 658 F.2d 260, 264-65 (4th Cir. 1981); Wilson v. Califano, 617 F.2d 1050, 1053 (4th Cir. 1980). The Commissioner may carry this burden by

---

[2] The court observes that effective August 24, 2012, ALJs may engage in an expedited process which permits the ALJs to bypass the fourth step of the sequential process under certain circumstances. 20 C.F.R. §§ 404.1520(h), 416.920(h).



obtaining testimony from a vocational expert. Grant v. Schweiker, 699 F.2d 189, 192 (4th Cir. 1983).

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), the court may review the Commissioner's denial of benefits. However, this review is limited to considering whether the Commissioner's findings "are supported by substantial evidence and were reached through application of the correct legal standard." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996); see also 42 U.S.C. § 405(g); Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987). Thus, the court may review only whether the Commissioner's decision is supported by substantial evidence and whether the correct law was applied. See Myers v. Califano, 611 F.2d 980, 982 (4th Cir. 1980). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig, 76 F.3d at 589. In reviewing the evidence, the court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." Id. Accordingly, even if the court disagrees with the Commissioner's decision, the court must uphold it if it is supported by substantial evidence. Blalock, 483 F.2d at 775.

## ISSUES

Robinson raises the following issues for this judicial review:

I.      The ALJ's determination that Robinson's carpal tunnel syndrome was not severe prior to June 1, 2010 is not supported by substantial evidence. The ALJ did not apply the proper standard of review in establishing Robinson's onset of disability.



      II.       The ALJ failed to properly assess Robinson's credibility.

(Pl.'s Br., ECF No. 16.)

## DISCUSSION

**A.    Onset of Disability**

As stated above, the ALJ found that beginning June 1, 2010 Robinson became disabled. This date is critical to Robinson's application for DIB benefits as her date last insured was March 31, 2010.

Prior to June 1, 2010, the ALJ found that Robinson retained the residual functional capacity ("RFC")

> to perform a range of light work as defined in 20 CFR 404.1567(b) and 416.967(b) in that she could lift and carry up to twenty pounds occasionally and ten pounds frequently; stand and walk for about six hours in a workday; and sit throughout the workday. She could never climb ladders, ropes, or scaffolds. She could finger, handle, and feel no more than frequently with both hands. She could not work with concentrated exposure to dust, fumes, gases, odors, or harsh chemicals, or in extremes of temperature or humidity. She could not face concentrated work at unprotected heights or more than frequently operate machinery with dangerous, exposed moving parts. By reason of her headaches and mental impairment, she could perform only unskilled work, involving no more than occasional direct contact with the public, no more than occasional team-type interaction with co-workers, no strict production quotas, no complex detailed instructions, and no complex reading.

(Tr. 14-15.) Based on this RFC, the ALJ determined that "there were jobs that existed in significant numbers in the national economy that the claimant could have performed." (Tr. 19.) However, beginning on June 1, 2010, the ALJ found that in addition to the above limitations, Robinson was limited to sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a), and "[d]ue to additional impairment of her wrists and hands, . . . she now can only occasionally finger, handle, and feel with both hands." (Tr. 18.) As a result of these additional limitations, the ALJ determined that



"there are no jobs that exist in significant numbers in the national economy that the claimant can perform." (Tr. 20.)

Since the alleged onset date of disability, the ALJ found that Robinson had the following severe impairments: asthma, obstructive sleep apnea, headaches, and anxiety. Beginning June 1, 2010, the ALJ found that Robinson's severe impairments also included bilateral carpal tunnel syndrome. (Tr. 13.) The additional limitations in Robinson's RFC beginning on June 1, 2010 appear to be due to Robinson's bilateral carpal tunnel syndrome.

Robinson argues that the ALJ's decision regarding her onset date of disability is not supported by substantial evidence. Specifically, Robinson appears to argue that there is no evidence in the record to support a determination that Robinson bilateral carpal tunnel syndrome began limiting her on June 1, 2010 and that the ALJ's selection of this date appears arbitrary. Moreover, Robinson argues that she was self-represented at the hearing, and the ALJ failed to adequately perform her duty to develop the record.[3] For example, Robinson contends that the ALJ failed to clarify Robinson's testimony regarding when her carpal tunnel symptoms began. Finally, Robinson

---

[3] The court observes that an ALJ has a duty to ensure a claimant receives a full and fair hearing of her claims. Sims v. Harris, 631 F.2d 26, 27 (4th Cir. 1980). This duty includes exploring relevant facts and inquiring into issues necessary for adequate development of the record. Cook v. Heckler, 783 F.2d 1168, 1173 (4th Cir. 1986). This duty is particularly important where a claimant appears *pro se.* Marsh v. Harris, 632 F.2d 296, 299 (4th Cir. 1980). However, the heightened duty of care in *pro se* cases relates to the development of the issues and facts in the record, and does not impact the weight to be given to the evidence in the record. See Bell v. Chater, 57 F.3d 1065, 1995 WL 347142 (4th Cir. June 9, 1995) (Table) ("[T]he ALJ is not required to function as the claimant's substitute counsel, but only to develop a reasonably complete record.") (citing Clark v. Shalala, 28 F.3d 828, 830-31 (8th Cir. 1994)). Whether she is represented or not, the plaintiff bears the burden of proof, and she is responsible for providing evidence to support her application and demonstrate disability. See 20 C.F.R. §§ 404.1512(a) & (c), 416.912(a) & (c); 42 U.S.C. § 423(d)(5)(A).



argues that as her onset date cannot be inferred from the medical evidence, the ALJ erred in failing to obtain a medical expert in accordance with SSR 83-20.

      Upon review of the record, the court finds the ALJ's determination that Robinson's bilateral carpal tunnel became a severe impairment on June 1, 2010 and resulted in additional limitations beginning on June 1, 2010 to be unsupported by substantial evidence.  As argued by Robinson, the record does not provide support for the ALJ's determination.  The medical record reflects that on June 9, 2010, Dr. J. William Moose, an orthopedist, examined Robinson who reported complaints of "bilateral hand numbness and pain, right is worse than the left" that had been present for many years. (Tr. 555.) Robinson also indicated that she has the symptoms while driving and at night, that splints provided no benefit, that she has dropped and broken many glasses, and that the pain radiates into her forearms. (Id.)  Dr. Moose found that Robinson's "[c]o-ordination is good. Median nerve compression test shows some positive Tinel's sign bilaterally. Positive Phalen's sign bilaterally, positive reverse Phalen's sign bilaterally, and positive pressure sign bilaterally. She has accurate 5 mm two-point discrimination in the digits." (Id.)  Dr. Moose recommended nerve conduction studies, which were performed on June 23, 2010. (Id.; Tr. 557.) The studies revealed "evidence of bilateral median nerve entrapment neuropathy (carpal tunnel syndrome) at the wrist affecting sensory and motor components, severe on the right and moderate on the left." (Tr. 557.) On September 1, 2010, Robinson indicated that her symptoms had worsened. Dr. Moose found that in addition to her severe right carpal tunnel syndrome, Robinson had "developed some de Quervain's tenosynovitis to the right wrist." (Tr. 577, 578.) Dr. Moose indicated that Robinson should wear a splint and was given a carpal tunnel injection. (Id.)



Robinson's other medical records provide little additional information on when this impairment became severe. Although records indicate that Robinson has a history of bilateral wrist pain with "questionable de Quervain tenosynovitis versus carpal tunnel syndrome versus cubital tunnel syndrome" (Tr. 311, 549), as noted by the ALJ, prior to her June 9, 2010 visit to Dr. Moose the record does not appear to indicate that Robinson received treatment for this condition since 2006. During the hearing, Robinson indicated that she had carpal tunnel syndrome years ago, but that it worsened in 2010 and 2011. Accordingly, it is unclear how the ALJ arrived at June 1, 2010 as the date that Robinson's carpal tunnel syndrome became a severe impairment and caused Robinson to experience additional limitations rendering her disabled. As mentioned above, this date is critical to Robinson's application for DIB as her date last insured was March 31, 2010.

Based on the foregoing and the record presented, the court cannot say that the ALJ's decision is supported by substantial evidence. The court is constrained to recommend remanding this matter for further development of the record.[4]

**B.     Other Issues**

In light of the court's recommendation that this matter be remanded for further consideration as outlined above, the court need not address Robinson's remaining issues, as they may be rendered moot on remand. See Boone v. Barnhart, 353 F.3d 203, 211 n.19 (3d Cir. 2003) (remanding on other grounds and declining to address claimant's additional arguments). Moreover, if necessary, Robinson may present her remaining arguments on remand.

---

[4] The court notes that it expresses no opinion as to whether further consideration of this issue would entitled Robinson to DIB. Further, to the extent that Robinson argues that the ALJ should obtain a medical expert in accordance with SSR 83-20, this argument may be presented to the ALJ for initial consideration.



## RECOMMENDATION

Based on the foregoing, the court recommends that the Commissioner's decision be reversed pursuant to sentence four of 42 U.S.C. § 405(g) and that the case be remanded to the Commissioner as discussed above.

                                                                       _____
                                                                       Paige J. Gossett
                                                                       UNITED STATES MAGISTRATE JUDGE

March 22, 2013
Columbia, South Carolina

*The parties' attention is directed to the important notice on the next page.*

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Larry W. Propes, Clerk
> United States District Court
> 901 Richland Street
> Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).