IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ROCK HILL DIVISION

| | |
|---|---|
| Wendy Robinson, ) | Civil Action No.: 0:12-cv-00842-RBH |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **ORDER** |
| ) | |
| Carolyn W. Colvin, Acting ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |
| ) | |

This matter is before the Court after the issuance of the Report and Recommendation ("R&R") of United States Magistrate Judge Paige J. Gossett.[1] Plaintiff Wendy Robinson brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of a final decision of the Commissioner of Social Security ("the Commissioner") denying Plaintiff's claims for disability insurance benefits and supplemental security income benefits under Titles II and XVI of the Social Security Act ("the Act"). In the R&R, the Magistrate Judge recommends reversing the decision of the Commissioner and remanding the matter for further administrative action.

**FACTUAL FINDINGS AND PROCEDURAL HISTORY**

Plaintiff applied for disability insurance benefits and supplemental security income benefits in July 2009, alleging a disability as of May 23, 2009. The applications were denied initially and on reconsideration. On August 23, 2010, Plaintiff requested a hearing before the Administrative Law Judge ("ALJ"). That hearing was held on August 3, 2011, and Plaintiff appeared and testified. A vocational expert also testified. The ALJ issued a decision dated August 9, 2011, finding that

---

[1] In accordance with 28 U.S.C. § 636(b)(1)(B) and Local Civil Rule 73.02(B)(2) (D.S.C.), this matter was referred to the Magistrate Judge.

Plaintiff was disabled; however, the ALJ found that her disability onset date occurred after the date she was last insured. The ALJ's overall findings were as follows:

> 1. The claimant met the insured status requirements of the Social Security Act through March 31, 2010.
>
> 2. The claimant has not engaged in substantial gainful activity since the alleged onset date (20 CFR 404.1571 *et seq*., and 416.971 *et seq*.).
>
> 3. Since the alleged onset date of disability, May 23, 2009, the claimant has had the following severe impairments: asthma, obstructive sleep apnea, headaches, and anxiety[.] Beginning on the established onset date of disability, June 1, 2010, the claimant has had the following severe impairments: asthma, obstructive sleep apnea, headaches, anxiety, and bilateral carpal tunnel syndrome (20 CFR 404.1520(c) and 416.920(c)).
>
> . . .
>
> 4. Since the alleged onset date of disability, May 23, 2009, the claimant has not had an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).
>
> . . .
>
> 5. After careful consideration of the entire record, I find that prior to June 1, 2010, the date the claimant became disabled, the claimant had the residual functional capacity to perform a range of light work as defined in 20 CFR 404.1567(b) and 416.967(b) in that she could lift and carry up to twenty pounds occasionally and ten pounds frequently; stand and walk for about six hours in a workday; and sit throughout the workday. She could never climb ladders, ropes, or scaffolds. She could finger, handle, and feel no more than frequently with both hands. She could not work with concentrated exposure to dust, fumes, gases, odors, or harsh chemicals, or in extremes of temperature or humidity. She could not face concentrated work at unprotected heights or more than frequently operate machinery with dangerous, exposed moving parts. By reason of her headaches and mental impairment, she could perform only unskilled work, involving no more than occasional direct contact with the public, no more than occasional team-type interaction with co-workers, no strict production quotas, no complex detailed instructions, and no complex reading.

. . .

6. After careful consideration of the entire record, I find that beginning on June 1, 2010, the claimant has the residual functional capacity to perform a range of sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) in that she can lift and carry up to ten pounds occasionally and only light objects frequently; stand and walk for about two hours in a workday; and sit throughout the workday. She can never climb ladders, ropes, or scaffolds. She cannot work with concentrated exposure to dust, fumes, gases, odors, or harsh chemicals, or in extremes of temperature or humidity. She cannot face concentrated work at unprotected heights or more than frequently operate machinery with dangerous, exposed moving parts. By reason of her headaches and mental impairment, she still can perform only unskilled work, involving no more than occasional direct contact with the public, no more than occasional team-type interaction with co-workers, no strict production quotas, no complex detailed instructions, and no complex reading. Due to additional impairment of her wrists and hands, however, she now can only occasionally finger, handle, and feel with both hands.

. . .

7. Since May 23, 2009, the claimant has been unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

. . .

8. Prior to the established disability onset date, the claimant was a younger individual age 18-49. The claimant's age category has not changed since the established disability onset date (20 CFR 404.1563 and 416.963).

9. The claimant completed high school with a certificate of attendance rather than a diploma, but she has also completed a training program as a nursing assistant. She is able to communicate in English (20 CFR 404.1564 and 416.964).

10. Prior to June 1, 2010, transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled" whether or not the claimant has transferable job skills. Beginning on June 1, 2010, the claimant has not been able to transfer job skills to other occupations (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

> . . .
>
> 11. Prior to June 1, 2010, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1569, 404.1569a, 416.969, and 416.969a).
>
> . . .
>
> 12. Beginning on June 1, 2010, considering the claimant's age, education, work experience, and residual functional capacity, there are no jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1560(c), 404.1566, 416.960(c), and 416.966).
>
> . . .
>
> 13. The claimant was not disabled prior to June 1, 2010, but became disabled on that date and has continued to be disabled through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).
>
> 14. The claimant was not under a disability within the meaning of the Social Security Act at any time through March 31, 2010, the date last insured (20 CFR 404.315(a) and 404.320(b)).

Tr. 13-21.

The ALJ's finding became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for further review on February 3, 2012. On March 23, 2012, Plaintiff filed this action seeking judicial review of the Commissioner's decision. Compl., ECF No. 1. Both Plaintiff and the Commissioner filed briefs, ECF Nos. 16, 18, 19, and the Magistrate Judge issued her Report and Recommendation ("R&R") on March 22, 2013, recommending that the Commissioner's decision be reversed and remanded, R&R, ECF No. 21. The Commissioner filed timely objections to the R&R on April 8, 2013, Def.'s Objs., ECF No. 22. Plaintiff did not file a reply.

4

## STANDARD OF REVIEW

The role of the federal judiciary in the administrative scheme established by the Act is a limited one. The Act provides that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). "Substantial evidence has been defined innumerable times as more than a scintilla, but less than preponderance." *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks and citations omitted).

This statutorily mandated standard precludes a *de novo* review of the factual circumstances that substitutes the Court's findings for those of the Commissioner. *See Vitek v. Finch*, 438 F.2d 1157, 1157-58 (4th Cir. 1971); *Hicks v. Gardner*, 393 F.2d 299, 302 (4th Cir. 1968). The Court "must uphold the factual findings of the [Commissioner] if they are supported by substantial evidence and were reached through application of the correct legal standard." *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012); *see also Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1973) (holding that the Court must uphold the decision supported by substantial evidence "even should [it] disagree"). "From this it does not follow, however, that the findings of the administrative agency are to be mechanically accepted." *Flack v. Cohen*, 413 F.2d 278, 279 (4th Cir. 1969). "[T]he courts must not abdicate their responsibility to give careful scrutiny to the whole record to assume that there is a sound foundation for the [Commissioner's] findings, and that his conclusion is rational." *Vitek*, 438 F.2d at 1157-58.

Furthermore, a *de novo* review is conducted of the Magistrate Judge's R&R. 28 U.S.C. § 636(b)(1). The R&R is only a recommendation to the Court and has no presumptive weight; indeed, the responsibility to make a final determination remains with the district court. *Mathews v.*

*Weber*, 423 U.S. 261, 270-71 (1976).  The Court is charged with making a *de novo* determination of those portions of the R&R to which specific objection is made, and the Court may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge, or recommit the matter to the Magistrate Judge with instructions. § 636(b)(1).

The right to *de novo* review, however, may be waived by the failure to file timely objections. *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982).  The Court need not conduct a *de novo* review when a party makes only "general and conclusory objections that do not direct the [C]ourt to a specific error in the [M]agistrate's proposed findings and recommendations." *Id.*  Moreover, in the absence of objections to the R&R, the Court is not required to give any explanation for adopting the recommendation. *Camby v. Davis*, 718 F.2d 198, 199 (4th Cir. 1983).  In that event, however, the Court must " 'satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.' " *Diamond v. Colonial Life & Accident Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

## APPLICABLE LAW

Under the Act, Plaintiff's eligibility for the benefits she is seeking hinges on whether she is under a "disability." 42 U.S.C. § 423(a).  The term "disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." *Id.* § 423(d)(1)(A).  "The ultimate burden to prove disability lies on the claimant." *Preston v. Heckler*, 769 F.2d 988, 991 n.* (4th Cir. 1985). A claimant may establish a *prima facie* case of disability based solely upon medical evidence by demonstrating that his impairments meet or equal the medical criteria set forth in Appendix 1 of Subpart P. 20 C.F.R. §§ 404.1520(d) & 416.920(d).

If such a showing is not possible, a claimant may also establish a *prima facie* case of disability by proving that she could not perform her customary occupation as the result of physical or mental impairments. *See Taylor v. Weinberger*, 512 F.2d 664 (4th Cir. 1975). Because this approach is premised on the claimant's inability to resolve the question solely on medical considerations, it then becomes necessary to consider the medical evidence in conjunction with certain "vocational factors." 20 C.F.R. §§ 404.1560(a) & § 416.960(a). These factors include the claimant's (1) "residual functional capacity," *id.* §§ 404.1560(a) & 416.960(a); (2) age, *id.* §§ 404.1563 & 416.963; (3) education, *id.* §§ 404.1564 & 416.964; (4) work experience, *id.* §§ 404.1565 & 416.965; and (5) the existence of work "in significant numbers in the national economy" that the individual can perform, *id.* §§ 404.1566 & 416.966. If the assessment of the claimant's residual functional capacity leads to the conclusion that she can no longer perform her previous work, it must be determined whether the claimant can do some other type of work, taking into account remaining vocational factors. *Id.* §§ 404.1560(c)(1) & 416.960(c)(1). The interrelation between these vocational factors is governed by Appendix 2 of Subpart P. Thus, according to the sequence of evaluation suggested by 20 C.F.R. §§ 404.1520 & 416.920, it must be determined: (1) whether the claimant is currently gainfully employed, (2) whether she suffers from some physical or mental impairment, (3) whether that impairment meets or equals the criteria of Appendix 1, (4) whether, if those criteria are not met, the impairment prevents her from returning to her previous work, and (5) whether the impairment prevents her from performing some other available work.

## ANALYSIS

The Magistrate Judge recommends reversing the Commissioner's final decision and remanding the matter, concluding that substantial evidence does not support the ALJ's finding that Plaintiff's disability onset date was June 1, 2010. In her objections, the Commissioner contends

that substantial evidence supports the ALJ's finding. Particularly, the Commissioner argues that Plaintiff never sought treatment for wrist pain until June 9, 2010. According to the Commissioner, "adequate and non-ambiguous medical evidence supported the ALJ's finding that Plaintiff's condition did not result in disabling functional limitations prior to June 1, 2010." Def.'s Objs. 4.

However, the Magistrate Judge specifically found that substantial evidence did not support the specific finding of June 1 because it was later that month when Plaintiff saw a doctor and was ultimately diagnosed with severe carpel tunnel syndrome. To the Magistrate Judge, the finding of June 1 has no evidentiary support in the record. This Court agrees. While the ALJ, as the fact-finder, is entitled to draw inferences from the evidence in the record, it is unclear how the ALJ found June 1 as the date Plaintiff's carpel tunnel syndrome ultimately rendered her disabled. Indeed, the only basis for June 1 is the ALJ's shaky inference that Plaintiff became disabled "[a]t the beginning of June." Tr. 14. The date Plaintiff became disabled is critical and dispositive of her claim. She was last insured on March 31, 2010, and, again, it was on June 9 of that year when she was seen for the problems with her wrists. On June 23, it was confirmed she had carpal tunnel syndrome: severe on her right wrist and moderate on her left wrist. The medical records do not adequately indicate the onset date when her carpal tunnel became a severe impairment.[2] Substantial evidence does not support the ALJ's finding. Therefore, the Court finds the Magistrate Judge's recommendation is proper, and the Commissioner's objections are overruled.

---

[2] Because Plaintiff represented herself at the hearing before the ALJ, the ALJ had "a duty to assume a more active role in helping [her] develop the record." *Sims v. Harris*, 631 F.2 26, 28 (4th Cir. 1980); *see also Craig v. Chater*, 76 F.3d 585, 591 (4th Cir. 1996). Despite the scant medical evidence of the severity of Plaintiff's carpal tunnel syndrome prior to June 9, the ALJ made no effort, beyond reviewing the evidence Plaintiff presented, to determine when her disability onset date was. Given the close proximity in time between Plaintiff's last insured date and her disability onset date, the Court finds the ALJ erred in not "call[ing] on the services of a medical advisor when onset must be inferred." SSR 83-20; *see also Bailey v Chater*, 68 F.3d 75, 79 (4th Cir. 1995) (finding error in the ALJ's decision "to forgo consultation with a medical advisor" in light of "the absence of clear evidence documenting the progression" of the impairment's severity). On remand, the ALJ is ordered to call on the services of a medical advisor.

## CONCLUSION

The Court has thoroughly reviewed the entire record as a whole, including the briefs, the Magistrate Judge's R&R, the Commissioner's objections, and applicable law.  For the reasons set forth above and by the Magistrate Judge, the Court hereby overrules the Commissioner's objections and adopts and incorporates the Magistrate Judge's R&R as modified.  Accordingly, the Commissioner's decision is **REVERSED** pursuant to sentence four of 42 U.S.C. § 405(g) and the case is **REMANDED** to the Commissioner for further proceedings consistent with this order, including the use of a medical advisor as discussed in footnote 2.

**IT IS SO ORDERED.**

s/ R. Bryan Harwell
R. Bryan Harwell
United States District Judge

Florence, South Carolina
August 29, 2013